# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**BRANDI DENTON and**
**HOLLY BRINKLEY**                                                                 **PLAINTIFFS**

VS.                                                          **CIVIL ACTION NO. 1:07CV115-D-D**

**CSC APPLIED TECHNOLOGIES, LLC**
**d/b/a CSC SECURITY SERVICES**                                                    **DEFENDANT**

### MEMORANDUM OPINION GRANTING
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Comes now before this Court, Defendant CSC Applied Technologies, LLC d/b/a CSC Security Services's ("CSC") Motion for Summary Judgment. After reviewing the motion, response, reply, rules, and authorities, the Court makes the following findings:

*A. Factual and Procedural Background*

The United States Air Force contracted with CSC to provide access control services at Columbus AFB. Plaintiffs Denton and Brinkley were employed by CSC as security guards on Columbus AFB. Security guards were hired to work in any of four locations: the two entry gates, the visitors' center and the commercial vehicle search pit area. Security guards were not hired to work in any one specific location but were often switched between the different locations. The United States Air Force's contract with CSC specifically required that all security guards be "capable of performing all duties without regard to any physical limitations that would preclude full performance of duty." Among the physical requirements demanded of all security guards was: 1) the physical ability of "subduing and detaining violent or potentially violent individuals;" 2) being able to "lift up to 50 pounds;" and 3) "frequent and prolonged walking, standing, sitting,

stooping, climbing, crawling, jumping, occasional running or sprinting." The job descriptions for Plaintiffs' security guard positions also spelled out these physical requirements. All job requirements were applicable to all CSC security guards, regardless of where they were posted and both Plaintiffs acknowledged that all security guards, even those in the visitor center, had to meet all of the physical requirements for guards. In addition, security guards were paid hourly wages and receive no extra benefits, health or otherwise, and there was no paid leave available to security guards.

While Plaintiffs were employed by CSC, Robert Belew served as Chief of Guards and was the ranking on-site CSC employee at Columbus AFB. Chief Belew was responsible for hiring and managing the staff of CSC security guards.

Denton began working for CSC as a part-time security guard working the gates in May, 2005. In late October, 2005, Denton informed Belew that she was pregnant and he reassigned her from one of the outside gates to the visitors' center. On November 14, 2005, Denton's doctor, Dr. Jack Kahlstorf, faxed Belew a note stating that during the remainder of her pregnancy, Denton could not perform all of the functions of the security guard position including standing for prolonged periods, lifting, pushing or pulling anything over 20-25 pounds, and wearing restrictive, heavy guard equipment. Upon receiving the doctor's note, Belew forwarded it to Program Manager Caul. Based upon the doctor's statements, Belew and Caul determined that Denten no longer met the physical requirements of a security guard. Belew was informed that there were no light-duty security guard positions and no accommodation could be made and therefore, Denten had to be removed from active duty.

Plaintiff Brinkley also began working for CSC as a security guard working the visitors' center at Columbus AFB in May, 2005. On December 14th, 2005, Brinkley discovered that she

had been pregnant for around 10 weeks and told Lieutenant Bryan. After that, Belew met with Brinkley at which time he gave her a document which listed the physical requirements and informed her that she had to get a doctor's note stating that she could perform the job duties. On December 29, 2005, Brinkley visited her doctor, Dr. Holzhauer, with the list given by Belew. Dr. Holzhauer wrote, "This patient may continue her present duties as she has described them until delivery but I cannot certify # 1, 3, 4."[1]

CSC based its decision to remove Plaintiffs from their security guard positions on the opinions of both of their doctors indicating that Plaintiffs were not physically able to do the physical requirements of the security guard position, requirements that were mandated by the services contract that CSC had with the United Stated Air Force. Given both Plaintiffs' medical and physical restrictions, CSC removed them from active service in their security guard positions but informed both Plaintiffs to return once they were able to physically perform the requirements of the job. Belew indicated on both Plaintiffs' electronic timesheets that their absence of hours worked following their removal as security guards was because of a medical leave.

Both Plaintiffs filed complaints with the EEOC alleging pregnancy discrimination in violation of the Pregnancy Discrimination Act. The EEOC found that CSC's actions of terminating Plaintiffs could be in violation of the Pregnancy Discrimination Act and Plaintiffs filed this lawsuit. The Court finds that Plaintiffs have presented no evidence of any genuine issue of material fact as to either of their pregnancy discrimination claims and therefore, they are both addressed below.

### B. *Summary Judgment Standard*

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil

---

[1] The duties are listed as, #1 Must be able to lift 50 lbs, unassisted; #3 Be physically fit to assist in restraining violent/combative personnel; and #4 Wear a bullet proof vest.

Procedure when evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. Id. at 323, 106 S. Ct. 2548. Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden then shifts to the non-movant to "go beyond the pleadings and by...affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324; Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). That burden is not discharged by "mere allegations or denials." Fed. R. Civ. P. 56(e). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

*C. Discussion*

The Pregnancy Discrimination Act states that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . .

as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k).

A PDA claim is analyzed like any other Title VII discrimination claim, which can be established through either direct or circumstantial evidence. See Wallace v. Methodist Hospital System, 271 F.3d 212, 219 (5th Cir. 2001); Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000); Urbano v. Continental Airlines, Inc., 138 F.3d 204, 206 (5th Cir. 1998). Plaintiffs' claims are based on the latter, thus their claims are analyzed under the familiar McDonnell Douglas framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973). Under this framework, each Plaintiff must first establish a prima facie case of pregnancy discrimination. If Plaintiffs establish a prima facie case, CSC is required to articulate a legitimate, non-discriminatory reason for its actions. McDonnell Douglas, 411 U.S. at 802; Johnson v. Louisiana, 351 F.3d 616, 621 (5th Cir. 2003). If CSC is able to articulate such a reason, then the burden shifts back to Plaintiffs to prove "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000). Throughout the McDonnell Douglas burden-shifting framework, the ultimate burden of persuading the trier of fact that the defendant's actions were intentionally discriminatory remains at all times with the complainant." Moore v. McCullough, 351 F. Supp. 2d 536, 539 (N.D. Miss. 2005) (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

Plaintiffs must raise a genuine issue of material fact as to all four elements in order to establish a prima facie case of discrimination. Johnson, 351 F.3d at 621. Each Plaintiff must show that: "(1) she was a member of a protected class, (2) she was qualified for the position she lost, (3) she suffered an adverse employment action, and (4) that others similarly situated outside

of the protected class were more favorably treated." See Willis v. Coca Cola Enterprises, Inc., 445 F.3d 413, 420 (5th Cir. 2006); Stout v. Baxter Healthcare Corp., 282 F.3d 856, 859-860 (5th Cir. 2002); Urbano v. Continental Airlines, Inc., 138 F.3d 204, 206 (5th Cir. 1998), cert. denied, 119 S. Ct. 509 (1998); Holden v. Alliance Compressors, L.L.C., No. 05-0984, 2006 WL 2356024, *3 (W.D. La. Aug. 14, 2006); Rhodes v. Rouse's Enterprises, L.L.C., No. 03-1383, 2004 WL 1857649, *2 (E.D. La. Aug. 18, 2004).

There is no dispute that Plaintiffs have proved the first and third elements of their prima facia case-they were pregnant and they suffered an adverse employment action. However, CSC argues that its motion should be granted first because the Plaintiffs failed to establish the second element-that they were qualified for the job and second because they failed to establish the fourth element-that others similarly situated were more favorably treated. The Court agrees with both arguments.

### I. *Second Element-Qualified for the Job*

CSC's first ground for granting summary judgment is that Plaintiffs failed to prove the second element, that they were qualified for the job. As several courts have recognized, being unable to perform a job due to physical restrictions placed on an employee due to pregnancy precludes a pregnancy discrimination claim. *See* Elliott v. Horizon Healthcare Corp., 180 F.3d 264 (5th Cir. 2004) (affirming summary judgment where plaintiff could not establish that she was qualified for the position she lost because of doctor's lifting restrictions due to pregnancy); Delcourt v. BL Development Corp., 1998 WL 911785 (N.D. Miss. 1998) (plaintiff alleging pregnancy discrimination could not show that she was qualified for her position for the purposes of establishing a prima facie case where she could not perform her job duties due to doctor's restrictions); Salazar v. Recreational Sports & Imports Dallas, Inc., 2005 WL 2026173, at *3

(S.D. Tex. 2005) (summary judgment for employer on pregnancy discrimination claim where plaintiff had doctor's physical restrictions and plaintiff herself admitted she could not perform all of her duties); Cole v. Venture Transport, Inc., 2000 WL 335743 (E.D. La. March 30, 2000) (summary judgment for employer on pregnancy discrimination claim where pregnant employee obtained a doctor's opinion that during pregnancy she could not exert force in excess of 100 lbs, a job-related business requirement, and was no longer qualified to be a truck driver); Rhodes v. Rouses's Enterprises, LLC, 2004 WL 1857649 (E.D. La. 2004), aff'd, 130 Fed. Appx. 678 (5th Cir. 2005) (affirming summary judgment where there was no evidence to support that the plaintiff was qualified for the job which she held since it required tasks that the plaintiff admitted she could not do and tasks which her own physician restricted her from doing.); cf. Carballo v. Log Cabin Smokehouse, 399 F. Supp. 2d 715 (M.D. La. 2005) (Employee established prima facia case of pregnancy discrimination through evidence she was discharged because she was pregnant despite being qualified to perform her job. There was no evidence presented that her doctor had restricted her activity or that she was incapable of performing her duties as a waitress.)

Plaintiffs try to rely on the fact that their doctors told them they could continue to perform their duties in the Visitors' Center. However, Plaintiffs admitted that an assignment to Visitors' Center still had the same physical requirements that neither of them were able to perform; therefore, they were no longer qualified to be security guards. The fact their restrictions were caused by doctor imposed physical restrictions due to their pregnancies does not dispense with the requirement that an employee must meet all the physical requirements to qualify to be a security guard pursuant to CSC's contract with the United States Air Force. Plaintiffs' doctors restricted the amount of weight they could lift and both Plaintiffs admitted that

the physical requirements were necessary to their job even if assigned to the Visitors Center. By their own admissions, Plaintiffs were not qualified to be security guards. There are no genuine issues of material fact under element two of the prima facia case and summary judgment is proper.

## II. Fourth Element-Differential Treatment

As to the fourth element- that others similarly situated were more favorably treated, the record is devoid of any evidence that Plaintiffs were treated differently than any other employee who was unable to perform the physical requirements of the job. Fifth Circuit jurisprudence provides that, under the PDA, an employer is obligated to ignore a woman's pregnancy and to treat the employee as well as it would have if she were not pregnant. Stout, 282 F.3d at 859. The PDA does not, however, impose an affirmative obligation on employers to grant preferential treatment to pregnant women. Urbano, 282 F.3d at 204. Plaintiffs asserted that at least two other employees, Sgt. Richard Bailey and Lt. Dorothy Bryant, with non-job related injuries or medical conditions were offered temporary minimal adjustments in job schedules and work assignments. The record reflects that Sgt. Bailey is diabetic and that CSC accommodated his disability in accordance with the Americans with Disabilities Act by allowing him to remove his vest to operate his insulin pump and assigned him to the Visitors' Center so that he could have regularly scheduled breaks and mealtimes. Plaintiffs do not allege that Sgt. Bailey was unable to perform the physical requirements and duties of the job or that his accommodation was similar to the accommodation they were seeking. Lt. Bryant was employed as a Lieutenant, not a security guard but the record does not reflect the difference in job qualifications and requirements for a Lieutenant versus a security guard. For arguments sake, the court will assume that the job qualifications and requirements are the same. Again, there is no evidence or assertion that Lt.

Bryant could not perform the physical requirements of the job, requested elimination of the physical requirements, or was provided an accommodation similar to the accommodation Plaintiffs were seeking. The record is devoid of any evidence that other non-pregnant CSC employees with similar physical restrictions were treated more favorably. Accordingly, summary judgment is appropriate because Plaintiffs have failed to produce any credible evidence to create an issue of fact with respect to the fourth element of their prima facia case.

### III. Legitimate Non-discriminatory Reason

Even if Plaintiffs could present facts to support a prima facia case, summary judgment would still be appropriate because Defendant has articulated a legitimate, non-discriminatory reason for their termination. Defendant has presented deposition testimony that plaintiffs were terminated because they could not perform the physical requirements of the job and because no light-duty work as a security guard was available. Plaintiffs admitted they were not able to satisfy the physical requirements to be a security guard. Plaintiffs also admitted that these requirements were important due to the nature of the job and that as security guards they might be called upon at any time to physically detain and/or subdue violent individuals on Columbus Air Force Base. In addition, both Plaintiffs presented CSC with doctors' notes that they were unable to meet the physical demands of the job.

This court has previously granted summary judgment on behalf of employer in a Title VII case where a doctor's restrictions showed employee could not perform the physical requirements of the job and no light-duty work was available; the court found this was a legitimate, non-discriminatory reason for employee's discharge. See Carpenter v. Gulf States Mfrs, Inc, 764 F. Supp. 427 (N.D. Miss. 1991). CSC's determination that Plaintiffs were no longer qualified to be security guards due to their inability to meet the physical requirements contained in CSC's

contract with the United States Air Force and Plaintiffs subsequent termination based on that inability, not their pregnancy, were legitimate, non-discriminatory reasons for removing Plaintiffs from their positions as security guards.

## IV. Pretext

Even assuming that Belew made the alleged comments[2], those comments alone are not sufficient evidence to prove pretext. Neither Plaintiff was immediately terminated when CSC learned of their pregnancy; it was not until after CSC received doctors' notes stating Plaintiffs could not perform the physical requirements to be a security guard that Plaintiffs were terminated. Belew attempted to accommodate Denton but was informed by the CSC Program Manager that CSC was bound by its contract with the United States Air Force which specifically required that all security guards meet all physical requirements and as a result, Plaintiffs could not remain security guards. Belew hired and was required to fire both Plaintiffs, though the decision did not appear to be his but instead that of the CSC program manager. Plaintiff Denton testified that she told Belew before he hired her that she planned on getting pregnant.

In order to find pretext, the jury would have to go beyond the record to find evidence of animus where none has been offered. Thus, no reasonable juror would conclude that Plaintiffs were terminated because of pregnancy discrimination. Fifth Circuit jurisprudence also supports this conclusion. It is well settled that comments alone will not overcome overwhelming evidence corroborating defendants' non-discriminatory rationale. *See, e.g.*, <u>Brown v. CSC Logic, Inc.</u>, 82 F.3d 651 (5th Cir. 1996). Although, the Fifth Circuit has held that such "stray remarks" may be sufficient evidence of discrimination if they were (1) related to the protected class of

---

[2] Plaintiffs testified in their depositions that Belew told Plaintiffs they should have thought about taking care of their family before they got pregnant and that he is fixed and they would not be pregnant if they were with someone like him. To the contrary, Plaintiff Denton also testified in her deposition that Belew specifically stated that her getting pregnant or having children was "not going to be a problem."

which plaintiffs are members; "(2) proximate in time to the terminations; (3) made by an individual with authority over the employment decisions at issue; and (4) related to the employment decisions at issue." Id at 655; Krystek v. University of Southern Mississippi, 164 F.3d 251, 256 (5th Cir. 1999) (citing Brown, 82 F.3d at 655).

However, in the present case, even if Belew's comments were found to be circumstantial evidence of pretext, summary judgment is still appropriate where, as here, the evidence overwhelmingly supports CSC's proffered non-discriminatory rationale. Thus, Plaintiffs have failed to rebut Defendant's legitimate, non-discriminatory reason for the terminations. Further, Plaintiffs have failed to establish that pregnancy, and not physical inability, was the defining reason or even a motivating factor in their termination.

### D. Conclusion

In sum, the court finds that the Plaintiff has simply not offered sufficient evidence to overcome summary judgment. Accordingly, Defendant's Motion for Summary Judgment is GRANTED. Plaintiffs have failed to establish their prima facie case of pregnancy discrimination for termination. Further, even if Plaintiffs did meet the initial burden under McDonnell Douglas, they could not overcome Defendant's legitimate non-discriminatory reason for the adverse employment action either by pretext or mixed motive.

A separate order in accordance with this opinion shall issue this day.

This the 28th day of October 2008.

*[signature]*

Senior Judge